MONTS *v.* STATE.

5002                                                                349 S. W. 2d 350

Opinion delivered September 18, 1961.

[Rehearing denied October 16, 1961.]

No brief filed for appellant.

*J. Frank Holt,* Attorney General, by *Jack Holt, Jr.,* Asst. Attorney General, for appellee.

CARLETON HARRIS, Chief Justice. Appellant was charged with feloniously damaging a dwelling house in the city of Little Rock by means of dynamite, or other explosive. On trial, he was convicted as charged in the Information, and his punishment fixed by the jury at five years imprisonment in the state penitentiary. From the judgment so entered, appellant brings this appeal. In his motion for a new trial, appellant sets out eight alleged errors as the basis for asking the Court to set aside the verdict of the jury, and to grant him another trial. These contentions are as follows:

"1.   The verdict of the jury is contrary to law.

2.   The verdict of the jury is contrary to the evidence.

3.   The verdict of the jury is contrary to both the law and the evidence.

4.   The Court erred in overruling defendant's Motion to Quash the Information filed by the Prosecuting Attorney.

5.   The Court erred in overruling defendant's Motion to transfer the cause of action to the Juvenile Court of Pulaski County, Arkansas.

6.   The Court erred in permitting police officers to testify to the admissions of the defendant when it was shown by the evidence that the defendant's statements were given involuntarily.

7.   The Court erred in overruling defendant's Motion for a Directed Verdict.

8. The Court erred in giving all of the State's Instructions.''

No brief has been filed by appellant in support of the position taken, but we proceed to a discussion of each assertion made in the Motion, though not necessarily in the order set out.

Assignment Nos. 1, 2, 3, and 7 relate to the sufficiency of the evidence, and the court's refusal to direct a verdict of not guilty. Monts was convicted of violating § 41-4237, Ark. Stats. (1947).[1] On the night of February 9th, 1960, the home of Cartelyou and Juanita Walls, at 1500 S. Valentine Street in Little Rock, was damaged by an explosion. Henry B. Heiberger and Richard J. Poppleton, Agents of the Federal Bureau of Investigation, assigned to the Bureau Laboratory in Washington and specializing in explosives, testified that the explosion was caused by either a large quantity of black powder (a low order explosive) or dynamite (a high order explosive). Appellant was subsequently arrested and confessed his participation in the crime. We have held that the extrajudicial confession of a defendant, accompanied by proof that the offense charged was actually committed by someone, will warrant a conviction. See *Ezell* v. *State*, 217 Ark. 94, 229 S. W. 2d 32, and cases cited therein. However, in the case presently before us, there is also additional corroborating proof. Earzie T. Cunningham, who lived in the vicinity of the Walls' house, testified positively that he observed Monts and another man, about 11 p.m., going to the Walls' home on the night of the bombing.

''I observed Monts. I didn't know who it was driving the car, I turned the corner. The light flashed on

---

[1] "Every person who shall willfully or maliciously destroy or injure any enclosure, building, dam, raft, pile of wood, plank, board or other lumber, any skiff, canoe, boat or other vessel, or any real or personal property whatsoever by means of dynamite, gunpowder, or other explosive, shall be deemed guilty of a felony, and upon conviction thereof, shall be fined in any sum not less than One Hundred [$100] Dollars nor more than Five Hundred [$500] Dollars or imprisoned in the State Penitentiary at hard labor for a term not less than [1] nor more than five [5] years or both, at the discretion of the court or jury trying the case."

him. I knew it was Monts. He proceeded then to the intersection of 15th and Valentine and a man joined him who I didn't know, and proceeded to the Walls' home, which I thought they was going to enter, but didn't, and I then flipped my cigarette away and saw him run back up the street. I don't know which way the other man went. I went on in the house."

Cunningham testified that the two men stayed for about a minute before running away, and that two or three minutes later, he heard the explosion. We hold that the evidence was sufficient to sustain the conviction.

It is next contended that the court was in error in overruling appellant's motion to quash the Information filed by the prosecuting attorney, appellant maintaining that the charge by Information is a violation of the provisions of the Fifth Amendment to the Constitution of the United States. The authority of the prosecuting attorney to charge persons with crime by Information is authorized in Amendment 21[2] to our state Constitution. Section 1 reads as follows:

"All offenses heretofore required to be prosecuted by indictment may be prosecuted either by indictment by a grand jury or information filed by the Prosecuting Attorney."

In *Penton* v. *State*, 194 Ark. 503, 109 S. W. 2d 131, and *Brocklehurst* v. *State*, 195 Ark. 67, 111 S. W. 2d 527, we sustained the validity of Amendment 21, and held that the provisions of the amendment were not void as repugnant to Article 5 of the Constitution of the United States. In *Gaines* v. *Washington*, 277 U. S. 81, the United States Supreme Court held that prosecution by Information instead of by indictment is not a violation of the Federal Constitution.

It is also asserted that the court erred in overruling appellant's motion to transfer the cause of action to the juvenile court of Pulaski County. As grounds for the motion, appellant asserted that he was 17 years of age,

---

[2] This amendment was proposed Amendment 22, and some early cases have referred to it as Amendment 22.

and a high school student. Section 45-241, Supp. (Section 1 of Act 263 of 1953), provides:

"When any child under fifteen (15) years of age is charged in the Circuit Courts of this State with any felony, the Circuit Court or the Judge thereof where such charge is pending, may, at his discretion order and direct that the criminal charge and the file and record thereof be transferred to the Juvenile Court of the County where the charge is pending, for such disposition as the Juvenile Court may adjudge and determine. Any bail or appearance bond given for the appearance of such child in Circuit Court shall continue in effect in the Juvenile Court."

Of course, appellant's age at the time of the filing of the motion was 17, and in addition, it will be noted that the matter of ordering the transfer is left to the discretion of the Circuit Court.[3] The aforementioned statute is somewhat in conflict with § 45-224 (Section 10, Act 215 of 1911), which provides that where a child under 21 years of age is arrested upon a warrant issued out of any of the courts of the state, "the judge of such court may, in his discretion, if he believes that the said child is either a dependent or delinquent child, dismiss the charge pending in such court and transfer such child to the juvenile court, there to be dealt with according to the provisions and spirit of this act." It is not necessary to determine whether Act 263 of 1953 repeals by implication the apparent conflict contained in Act 215 of 1911, for, as noted, even under the provisions of the earlier statute, the matter of transfer is left to the discretion of the court. Under the facts and circumstances in this case, we find no abuse of discretion in refusing to grant the motion.

Appellant asserts that the confession given was involuntary, and the court erred in permitting the officers to testify to the admissions made. After hearing testimony relating the fact of the explosion, the damage

[3] Section 46-302.4 Supp. also authorizes the Court to send minors under 18 years of age, who have been convicted of a felony, to the penitentiary "if in the judgment of the trial judge, such course may be expedient."

occasioned thereby, and the probable cause of the explosion, the court retired to chambers, out of the presence of the jury, and proof was taken relative to the confession given, and admissions made. Monts stated that he was arrested on the Tuesday following the bombing, and taken to the Police Department, where he was questioned by several officers. He said that he was threatened by Special Agent Melford C. Runnells of the Federal Bureau of Investigation, and was struck on the temple by the agent with a steno pad; that one of the city detectives "kneed" him. Appellant testified that when food was finally offered him, it was not acceptable. "Well, it was some bologna and some non-flavored grits. I don't like bologna." He stated that he was questioned on Tuesday and Wednesday, and on Wednesday night was released and sent home. His parents were permitted to visit with him on Wednesday, prior to his release. Monts was re-arrested about noon the next day and returned to the city jail. He testified that he requested counsel, "which I didn't get;" that Runnells and Officer Green of the Little Rock Police Department threatened him, and a third officer in the room struck him. "I think the other one hit me, I am not sure." On Thursday evening, the prosecuting attorney went to the jail and talked with Monts, the latter admitting his part in the crime.[4] At this point, appellant's testimony is somewhat confusing, inasmuch as he testified that he made no admissions until talking to the prosecuting attorney. Further, "Had anybody hit you? A. No, sir." Admittedly, he made no request for an attorney at the time he was being questioned by the prosecuting attorney, nor were any threats made by anyone present. Monts stated that he was tired and sleepy while being questioned, and had had no occasion to sleep. Runnells, along with Little Rock city officers Robert Green and A. L. Halcomb testified that the confession was entirely voluntary.[5] The proof reflected

[4] No written confession was taken by the prosecuting attorney, though a secretary was present keeping a record of the conversation. Monts had already, earlier in the day, executed a written statement before Special Agent Runnells, and Officers Halcomb and Green of the Little Rock Police Department.

[5] Actually, according to Runnells, three written statements were taken. In the first, Monts did not implicate himself, but only the man

that Runnells asked the questions, and the other officers, along with Special Agent Webb of the F. B. I., were present. According to the evidence, Monts related that he met a Negro man, who had the dynamite; he (Monts) knew that it was an explosive, and went with the other to set it off; struck a match up against the brick foundation, the match breaking; his companion then took a match from a box and lighted the fuse, and he (Monts) ran. Runnells stated that he asked the motive, and was told that appellant "thought if he did this, it would cause some commotion, and Cartelyou would be able to get some donations and money from up North, and he never could specify where or when or anything about it." The officers stated that Monts was not struck, threatened, or mistreated in any manner, and that no request was made for an attorney. O. W. Gibson, pastor of White Memorial Methodist Church, testified that he visited the appellant at the jail on Friday, and that the left side of appellant's face was partially swollen. He stated that Monts related to him that the swollen face was caused by being struck by one of the officers, but that appellant was unable to distinguish between the federal agents and city detectives. The court held that the question of whether the confession was voluntarily given was a question of fact to be determined by the jury.

Upon returning to the courtroom, the aforementioned officers testified before the jury, reiterating that the confession was voluntary. Runnells testified that he told Monts before any statement was made that he was entitled to a lawyer, but there was no such request. The agent stated that no promises of any nature were made, or physical violence used at any time. The officers testified relative to the admissions made by appellant concerning his participation in the crime, and Runnells stated that, in addition to the statement heretofore quoted as to motive, Monts also made some comment to the effect that his associate was to give him $50 for his part in the crime. Earzie Cunningham testified as ear-

---

who was with him; the next was in his handwriting, and the third was typewritten, substantially a copy of the second; in the latter statements, Monts admitted his complicity in the crime.

lier related in our discussion of whether the evidence was sufficient to sustain a conviction. Monts did not testify before the jury, but the Reverend Gibson repeated the testimony given before the court in chambers. However, Special Agent T. B. Webb of the F. B. I., in rebuttal testimony, disputed the evidence given by Gibson. Webb stated that he, with another special agent, Thomas J. Norton, talked to Gibson and made some notes of the conversation; that Gibson had said he (Gibson) had observed Monts' head, but saw no marks, though appellant had told the minister that he had been kneed in the side by an officer. According to Webb, Gibson stated that he then asked appellant if the F. B. I. was present, and Monts replied that no F. B. I. agents were present, only police officers.

We think the court acted properly in submitting the issue of the voluntariness of the confession to the jury. In *McClellan* v. *State,* 203 Ark. 386, 156 S. W. 2d 800, this Court said:

"In such cases the practice approved by us, which was followed in the instant case, is for the Court to hear the testimony in the absence of the jury as to the circumstances under which the confession was given, and if there is a substantial question as to whether it was freely and voluntarily made, to submit that question of fact to the jury, after admonishing the jury to disregard the confession unless it was found to have been voluntarily made."

It certainly would not appear that the testimony of the officers relative to the admissions made by Monts, should have been excluded because of appellant's claim that he had been mistreated. Of course, it is not unusual for a defendant who has admitted participation in a crime, to subsequently contend that he was mistreated by those conducting the examination. While several officers participated in the investigation and interrogation, it appears that Runnells conducted most of the questioning. The record reveals that he had served with the F. B. I. for about ten years, and was working on the

bombing case at the request of the Little Rock Police Department. Certainly this officer was familiar with the fact that a confession obtained through coercion, threats, or duress, is inadmissible; also, that a defendant is entitled to an attorney if he so desires, and Runnells testified that he so advised Monts before any statements were made. The Little Rock officers had also been connected with the department for a long number of years—Halcomb for seventeen, and Green for fifteen. Against their statements were those of the appellant himself, and the Reverend Gibson, and a portion of the latter's testimony consisted only of what he had been told by Monts. Monts' testimony (before the court) that at the time he made the oral statement to the prosecuting attorney, he had had no occasion to sleep, and was sleepy, is somewhat puzzling, in view of the fact that appellant had gone home with his father about 8:30 p.m. the night before, and was not re-arrested until noon the following day.

There was no error in allowing the testimony of the officers relative to the admissions made by appellant to go to the jury.[6] The court instructed the jury at length relative to whether the confession was voluntarily made,[7]

---

[6] The statements in writing were introduced by the defense.

[7] "There is evidence here that the defendant made a confession. Before you can consider any confession as evidence, you must find, first, that he did make a confession; second, that the confession he did make was the one you heard on the witness stand; third, that when he made it he told the truth; fourth, that it was voluntarily made.

In order for a confession to be voluntary you must find that it was made without hope of reward or fear of punishment. The basis of the statement that a confession must be voluntary is that the constitution of the State says that no person shall ever be compelled to give evidence against himself.

The presumption of the law is that any confession made by a defendant, when he is in custody of officers, whether these officers be the sheriff, detectives, policemen, the prosecuting attorney, or any other officer, is involuntary and incompetent and cannot be considered by you.

The effect of that presumption is to cast the burden of proof upon the state to prove by a preponderance of the testimony that the confession was voluntary. They must overcome this presumption of law to your satisfaction and show that the confession was voluntary.

If you find that the defendant, during the time of his custody, was under the influence of officers at any time such as would make any statement or confession involuntary, the law presumes that this influence continues and makes all other statements or confessions made

and the instruction was entirely correct, and in accord with our cases. Let it also be borne in mind that, aside from the confession, there was the independent evidence of Earzie Cunningham that he observed the defendant at the Walls' home—saw him run away from the premises, and then heard the explosion.

Appellant also contends that the court erred in all of the State's instructions given, but appellant did not make any specific objection to any of such instructions; an examination of same reveals that none are inherently erroneous. In *Rutledge* v. *State*, 222 Ark. 504, 262 S. W. 2d 650, we said:

"We find nothing in the instruction that would mislead or confuse the jury to the prejudice of appellant. It was not inherently wrong. Appellant made only a general objection. It was his duty, by a specific objection, to point out to the court any vice or error in this instruction in order to afford the trial court an opportunity to make corrections if necessary. This he failed to do."

Finding no reversible error, the judgment is affirmed.

---

by him thereafter incompetent until the state shows by a preponderance of the testimony, that this influence has been removed.

Before any statements or admissions made by the defendant can be used against him as evidence, such statements or admissions must have been freely and voluntarily made, and which such statements and admissions, if any, are induced by threats of harm, promise of favor, a show of violence, a putting in fear, or inquisitory methods are used to extort a confession, then the same is attributed to such influence and cannot be used against the defendant."

\* \* \*

"The State has introduced evidence of confessions, and the Court now instructs the Jury that if you find that the defendant made the confessions involuntarily, by reason of duress, undue influence, brutality, then you should disregard such confessions entirely and not consider them as evidence."