JOHN PETTY, LUTHER ERNEST MYRICK AND WILLIAM NEIL DODSON v. STATE

5221                                          411 S. W. 2d 6

Opinion delivered February 6, 1967

*Hamilton & Carson,* for appellant.

*Bruce Bennett,* Attorney General; *Clyde Calliotte,* Asst. Atty. Gen., *Fletcher Jackson,* Asst. Atty. Gen., for appellee.

PAUL WARD, Justice. The appellants (John Petty, Luther Ernest Myrick and William Neil Dodson) were charged by information on December 14, 1965 with the crimes of burglary and grand larceny for unlawfully, wilfully and feloniously breaking and entering the Ozark Bowling Lanes, Inc. in Fayetteville, and taking money in excess of $35.

The trial resulted in verdicts of guilty against all defendants on both counts fixing the punishment of each at two years imprisonment for burglary and one year for grand larceny—said sentences to run consecutively.

Upon appeal appellants raise eighteen separate points in an attempt to show reversible error.

Since we have concluded the cause must be reversed for reasons presently set forth we will not discuss many 'of the assignments of error or the testimony relating thereto. We deem it sufficient therefore to set out only a summary of the facts material to this opinion.

*Facts.* At approximately 4:30 a.m. December 13, 1965 the night watchman at the bowling lanes discovered that the premises had been burglarized. He also noticed footprints in the soft dirt near the rear door which appeared to have been pried open. He promptly notified the police. He had previously noticed three trucks parked at a filling station nearby. When he went over to ask 'the drivers if they had seen anything suspicious he found no one. He then returned to the bowling lanes for a few minutes and as he started back he noticed one of the trucks pulling out. He tried to flag the truck down with a flashlight but was unsuccessful, and then the other two trucks also drove away. When the police arrived

they pursued the trucks and apprehended them at West Fork about ten miles south of Fayetteville. When the drivers professed no knowledge of the burglary they were permitted to continue and the police returned to the filling station. Upon arrival they were later informed by the attendant that he saw one of the drivers throw something in a trash can. Upon examination of the can they found certain articles which appeared to have been taken from the bowling lanes. Thereupon a "pickup" was radioed to other police cars.

At about 6 p.m. the same day the drivers were apprehended and arrested at Mt. Ida some 100 miles south of Fayetteville. The arresting officer placed the drivers in jail and took possession of the truck keys. Some six hours later two state policemen arrived, took the keys and searched the trucks. Approximately twelve hours later the trucks were searched again. Each search produced certain incriminating evidence. They found and took possession of filed down screwdrivers, an iron bar, a pair of boots, and two rolls of nickels with wrappers like those used at the bowling lanes. At the trial these items were introduced in evidence over the objections of appellants.

*One.* It is here contended by appellants that their constitutional rights were violated because the search of their trucks took place without a search warrant, and that, consequently, these items were inadmissible in evidence. We think the contention of appellants must be sustained.

We are unable to distinguish this case, in principle or on facts, from the case of *Preston* v. *United States,* 376 U. S. 364, 11 L. Ed. 2d 777. In that case the police received word that three suspicious men had been parked in an automobile in the business district of Newport, Kentucky for several hours. They proceeded to the scene, questioned the three men, found they were unemployed, had no money, and could give no satisfactory explanation of their presence. Thereupon the police of-

ficers arrested them for vagrancy, searched them for weapons and took them to the police station. The car was first taken to the police station and then towed to a garage. A short while later the police went to the garage and forced their way into the locked trunk of the car and found certain articles which appeared to link them with an alleged conspiracy to rob a bank. Later there was a conviction of Preston and his companions based on the introduction in evidence of the recovered articles. In reversing the convictions the Court made statements applicable to the issue here under consideration.

"Our cases make it clear that searches of motor cars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible."

\* \* \*

"Here we may assume, as the Government urges, that either because the arrests were valid or because the police had probable cause to think the car was stolen, the police had a right to search the car when they first came on the scene. But this does not decide the question of reasonableness of a search at a later time and at another place . . .

The search of the car was not undertaken until the petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime. . ."

Obviously there is a striking similarity between the vital facts in this case and the *Preston* case. There was no search warrant, the men had been arrested, they had no chance to escape, there was a lapse of time (much more in this case) between the arrest and the search, and there was no chance that the articles recovered would be moved or lost.

In the case of *Williams et al* v. *State,* 237 Ark. 569 (p. 573), 375 S. W. 2d 375, we cited *Mapp* v. *Ohio,* 367 U. S. 643, and said:

" . . evidence illegally obtained is not admissible in the State courts, regardless of the previous holding of the State courts on this point."

*Two.* There is no merit in appellant's contention that it was error for the trial court to refuse to suppress the evidence at the beginning of the trial on the ground that they were not indicted by a grand jury. As previously mentioned, the appellants were brought to trial on an Information, and it is the contention of appellants that this was in violation of the Fifth Amendment to the U. S. Constitution.

We have held many times that presentment by Information is not in violation of the U. S. Constitution. In 1936 this State adopted Amendment No. 21 to our constitution, which reads:

"All offenses heretofore required to be prosecuted by indictment may be prosecuted either by indictment or information filed by the Prosecuting Attorney."

For some of the recent decisions upholding the constitutionality of said amendment see:
*Smith* v. *State,* 218 Ark. 725, 238 S. W. 2d 649
*Moore* v. *State,* 229 Ark. 335, 315 S. W. 2d 907,
*Monts* v. *State,* 233 Ark. 816, 349 S. W. 2d 350,
*Beckwith* v. *State,* 238 Ark. 196, 379 S. W. 2d 19.

*Three.* Appellants say they were prejudiced because the court would not allow them (a) to "inquire as to the competency, character and reputation for untruthfulness of the state's witness, Mr. Adney", and (b) to question his employer in an attempt "to explore the competency, character and reputation for truthfulness" of Adney.

We feel that the above complaint is too general and indefinite to show reversible error, especially since it is not necessary to do so in this case. If there is another trial and this point arises, we suggest that the case of *Wright* v. *State*, 133 Ark. 16 (p. 25), 201 S. W. be examined.

*Four.* Appellants attempted to testify to certain conversations among themselves, but the trial court refused to let this testimony go to the jury. We think the court was right in excluding this testimony because it was self-serving. A similar situation was considered in the early case of *Littlejohn* v. *State*, 76 Ark. 481, 89 S. W. 463, where this Court said: "These questions were designated to elicit self-serving declarations, or might have done so, and the court ruled correctly in not permitting the witness to answer them."

*Five.* It was not error for the trial court to refuse to allow appellants to ask a State witness what a third person had told him on a certain occasion. Whatever the third party may have said to the witness, would, of course, have been hearsay and therefore inadmissible.

Appellants have also made other objections to certain rulings of the court. We have carefully examined each of these objections and find no reversible error.

It follows from what we have said that the judgment of the trial court must be, and it is hereby, reversed.

Reversed.

HARRIS, C. J. & FOGLEMAN, J. dissent.

JONES, J. concurs.

JOHN A. FOGLEMAN, Justice, dissenting. The majority reverse this case on the authority of *Preston* v. *United States*, 376 U. S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881,

which they say would render the search of the trucks, which were being driven by the appellants at the time of their arrest, unreasonable. I do not agree. I believe that a proper distinction can be made and I am unwilling to join in extending the rule of this case further than its direct holding or to anticipate that the Supreme Court of the United States would do so, and, thus, act upon what such anticipation might indicate. Nothing in any of the decisions of that court limiting the right of police officers to make a search without a warrant has restricted introduction of any evidence obtained other than by an unreasonable search. I cannot agree that the search in this case, without a warrant, was unreasonable.

There is no doubt that searches of motor vehicles must meet the test of reasonableness under the Fourth Amendment before evidence obtained thereby is admissible. But it is recognized in the Preston case that the same standards cannot be applied to searches of motor vehicles or other things readily moved as are applied to searches of fixed structures like houses. See, also, *Carroll* v. *United States,* 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280 (1925); *Brinegar* v. *United States,* 338 U. S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949).

As the writer of the opinion in the *Preston* case observed, what may be an unreasonable search of a house may be reasonable in the case of a motor vehicle. In the *Preston* case, the original arrest was for vagrancy and there was little likelihood that evidence of this crime might be destroyed or removed. It was only after the search of the vehicle of those arrested that federal charges of conspiracy to rob a bank were placed. These appellants were charged with a felony involving larceny, and the intent to commit larceny, and there were reasonable grounds for the officers to believe that incriminating evidence might be found in the trucks operated by appellants. While there is little likelihood that appellants themselves could remove or destroy this evidence after having been incarcerated (as in the *Preston* case), it must be remembered that the trucks being driven by

them belonged to their employer who, no doubt, would take steps to move the trucks on to their destination at the earliest possible moment. There would be no means of the officers knowing whether such drivers as did move the trucks would either inadvertently or deliberately remove or destroy any incriminating evidence. While the keys to the trucks may have been in the custody of the officers at Mt. Ida, it might not have been necessary to have obtained these keys to have moved the trucks and there was no way to know at what hour substitute drivers might arrive.

It must also be remembered that in the *Preston* case, the motor vehicle was not searched at the place of arrest, but that it had been first removed by the officers to the police station (where it was not searched) and then towed to a garage, apparently at the direction of the officers, where there was no likelihood that it would be removed from the jurisdiction. The conclusion that this vehicle was at all times under the complete and exclusive control of the officers seems justified, so that no reason existed why a search warrant might not have been obtained. Here, the distance from the place of arrest and the place the trucks were left was some 100 miles and in a different county from the place of the alleged crime and where appellants were taken to be held for trial. Appellants were arrested by a state policeman stationed at the place of arrest between 6:30 and 7:00 p.m. by virtue of a "pickup" with arrest warrant numbers from Fayetteville given over radio at Clarksville, apparently at the behest of the Fayetteville Chief of Police. It is only reasonable to presume that this officer, at that time, knew nothing except what a warrant would state—that the appellants were charged with burglary and grand largency without any specifications or particulars. He could not have known what evidence to search for at that time. It appears that Chief Spencer and Lt. Griffin arrived at Mt. Ida at 12:30 a.m. of the following day when they took charge of appellants and returned them to Fayetteville, along with a pair of boots, some tools and some coins taken from the trucks. There is

testimony that Officer Thomas was not present when Chief Spencer and Lt. Griffin came to pick up appellants. Thomas, the officer who made the arrests, then searched the trucks, within twenty-four hours following the original arrests, and found a sack of coins in one of the trucks.

The search by the officers who had information as to the alleged crime was made as soon after the arrest as it was reasonably possible to do. While there is no direct testimony, it seems that the inference is that the state policeman who actually made the arrests made his search within a reasonable time after he could have been expected to have detailed information about the offense charged.

The language quoted in the majority opinion from the *Preston* case indicates that its holding turns upon a search made not at the place of arrest, but "at a later time *and* another place." This search took place at the place of arrest and as soon as it might reasonably have been expected to be done. It is significant to me that not only the *Preston* case but the holding in *Stoner v. California,* 376 U. S. 483, 11 L. Ed. 2d 856, 84 S. Ct. 889, decided the same day, is also based on the fact that the searches were completely unrelated to the arrests, both as to time and place.

While it is perhaps academic, it might also be considered that the officers would have had to find the solution as to jurisdiction and venue (as between Washington county and Montgomery county) for the issuance of a search warrant, and this at night when they would also have had to locate a judge or magistrate with the appropriate jurisdiction.

Because of these distinctions, I cannot agree that the search here was unreasonable under any standard heretofore laid down by the courts, state or federal.

I am authorized to state that Harris, C. J., joins in this dissent.

J. Fred Jones, Justice, concurring. I concur in the results reached by the majority in this case, but on different grounds. I find no substantial competent evidence in the record that the appellants committed the crime for which they were convicted.