LAMAR HUGHES, LAVONNE HUGHES AND WAYNE BRIDGES *v.* STATE OF ARKANSAS

5540                                    461 S. W. 2d 940

Opinion delivered January 18, 1971

No brief for appellants.

*Joe Purcell*, Attorney General; *Mike Wilson*, Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Lamar Hughes, Lavonne Hughes, and Wayne Bridges, appellants herein, were charged with robbery, and on trial, were convicted of the lesser offense of assault with intent to rob. The jury fixed their punishment at five years confinement in the State Penitentiary. From the judgment entered in accordance with the verdict, appellants bring this appeal. No brief has been filed by the appellants, and the Attorney General has filed a brief pursuant to Rule 11 (f) of the procedural rules of this court. The appeal is heard on the alleged errors asserted in the motion for a new trial, which motion was denied by the Circuit Court. Sixteen such errors are listed, but the first seven all deal with whether there was substantial evidence offered on behalf of the state to support the conviction.

Clayton Blaschke, 36 years of age, who lives near Subiaco with his brother-in-law, testified that on April 22, 1970, he drove to the Dairy Queen in Paris at approximately 9:45 p.m. While he was sitting in his car, two of the appellants, Wayne Bridges and Lamar Hughes, got into the automobile, one on each side of Blaschke, Bridges asking for money. The witness said that he refused the request and Bridges started hitting him, and then he was struck by Hughes. Hughes then drove the car away from the premises, and the third appellant, Lavonne Hughes, was picked up, after which they drove to Henry's Tavern. Lamar Hughes held

Blaschke and Bridges got a ten dollar bill out of his (Blaschke's) pocket. Lavonne Hughes (from subsequent evidence), and Bridges went into the tavern and bought a case of beer. They returned, and the car was driven to the "spillway", located on the city lake near Paris. Blaschke testified that Bridges and Lamar Hughes then beat him. He stated that Lavonne Hughes did not take any part in the beating but stood by, drinking beer. Two dollars, which he had in the ash tray of the car, was taken while at the spillway. Photographs which were made on the morning following the alleged occurrence, reflect that Blaschke had apparently received a severe beating. Joe McCloskey, who lives on North Express Street in Paris, where the Blaschke car was found the following day, testified that around 2:00 or 2:30 a.m. he was awakened by profane language, and a lot of "hollering and whooping" and observed four boys on the adjoining street, about one hundred feet from his bedroom window. The witness said that the three went toward town (the profanity was emanating from these three) and the other went back the opposite direction. Horace Pilgreen, a night patrolman for the city of Paris, testified that he found Lamar Hughes about a block from McCloskey's and the other two appellants were apprehended later at the home of Bridges. Barbara Jones, a niece of Blaschke's, testified that he came to her home about 2:00 a.m., his face bloody and swollen, and that he could hardly see. She said that his lips were "busted" and bleeding. Mrs. Henry Anhault who, with her husband, operates Henry's Tavern, testified that Lavonne Hughes and Bridges came into the tavern about 10:00 or 10:15 p.m. on the night of April 22, and purchased a case of beer, also some chips and peanuts, paying for it with a ten dollar bill. The beer amounted to $6.00 and she said that she gave some change and three bills back. Henry Anhault corroborated this testimony. Both were positive in their identification of Lavonne Hughes, stating that they did not see Lamar Hughes. The related testimony, if believed by the jury, was ample to sustain the convictions.

It is next asserted that the court erred in allowing

the testimony of Sheriff Raymond Henson as to the statements of appellants because they were not offered counsel and a demand for counsel had been made. This fact is very much disputed. It might be said at the outset that in the statements made to the officers, none of the defendants ever admitted that they robbed, or attempted to rob, Blaschke. The sheriff said that Lavonne Hughes stated that he was not present at the time of any beating, being on a date with a girl friend. According to the sheriff, Lamar Hughes and Bridges stated that Bridges and Blaschke became involved in a fight, and Lamar struck Blaschke when he saw the latter trying to get a knife. The two said that they got into another fight with Blaschke out at the spillway, and had another row in town. They admitted purchasing the case of beer, but stated that Blaschke gave them the ten dollar bill with which the beer was bought. Henson testified that the Hughes boys[1] were friends of his and that, before any statement was made, the prosecuting attorney advised them of their right to remain silent; that they had the right to have an attorney present when they were being questioned, and if they were not able to employ an attorney, the court would appoint one for them. The two Hughes boys were questioned together, and Bridges was subsequently questioned, but the sheriff stated that all three were advised, as heretofore set out, before any statement was made. According to the officer the appellants Hughes said that they did not wish a lawyer and would voluntarily make a statement. Before Bridges was questioned, his father was asked to go with the officials when they talked with Bridges, but refused; Bridges volunteered to tell the officials "part" of what happened. On trial, neither of the Hughes boys made any complaint that their statements had been involuntary, nor did they deny that they had been advised of their constitutional rights. Bridges testified on cross-examination by the prosecuting attorney, that the latter had told him to get a lawyer and "that is the reason I didn't talk to you". He further stated that "all I told you was that

---

[1]The record reflects that the two Hughes boys were 21 year old twins, and Bridges was 19 years of age.

Tobe [Blaschke] hit me and I hit him back". Though Bridges testified that the trouble started when Blaschke tried to touch or grab his privates, this was not mentioned to the officers.[2] As stated, there was no admission of the crime charged, but, at any rate, it certainly appears from the record that appellants were advised of their constitutional rights and that the statements were voluntarily made.

It is next asserted that "The court erred in permitting the prosecuting witness, Clayton Blaschke, to testify that the defendants robbed him where his testimony was so inaudible, incoherent and not understandable, that he was beaten and robbed by defendants without specifying who, when and where, and such testimony was so confusing that it was not worthy of belief, over the defendants' objections to all of which the defendants duly saved their exception". This point, of course, relates somewhat to the one just discussed, since the state could not have obtained a conviction without the testimony of Blaschke. It is true that some of his statements were inconsistent, particularly with reference to where he was beaten, and where Lavonne Hughes got into the automobile, but Blaschke very clearly testified that he was beaten by Bridges and Lamar Hughes and his money forcibly taken. He said that Lavonne Hughes did not strike him, but that Lavonne was present, standing by, drinking beer, while at least one of the beatings was administered. There is an indication from the questions asked, and objections made, that Blaschke might be considered as mentally retarded. The court properly did not permit certain questions asked by the state, relating to Blaschke's mentality, to be answered by some of the witnesses, those witnesses not being ex-

[2] On behalf of appellants, four young men testified to similar occurrences. Bridges said that it had happened with him before but, "usually when I tell him to leave me alone, he leaves me alone. Usually he doesn't hurt me when he grabs me, and I just tell him to leave me alone and he will leave me alone". On the other hand, two employers of Blaschke, a merchant and a farmer, testified that they had known him for a long number of years and had never heard of him "approaching" other men, nor attempting to molest any person.

perts, but Blaschke was characterized as "slow" in the testimony. Be that as it may, the jury saw and heard this witness testify from the stand, as well as the appellants, and other witnesses both for the state and the defense, and it was within their province to determine which witnesses to believe.

It is next contended that the court erred in permitting photographs which depicted Blaschke's physical condition the morning after the alleged beatings. We have held that the admission of such photographs largely rests within the discretion of the trial court. *Stanley v. State*, 248 Ark. 787, 454 S. W. 2d 72. Certainly there was no abuse of discretion where the photographs reflected Blaschke's condition the day after the alleged incident, particularly when one of the appellants testified that Blaschke "got a whipping" but that he did not classify it as a "beating".

Appellants contend that the court erred in each and every instruction given. There is no merit in this contention. None of the instructions are unusual, but rather they are the standard instructions on burden of proof, presumption of innocence, definition of reasonable doubt, credibility of the witnesses, and a definition of principals and accessories; a definition of robbery, and assault with intent to rob were also given.

Point number fourteen asserts that the court erred in giving instruction number six, which defines principals and accessories. Actually, no specific objection was made to any of the court's instructions; this instruction which told the jury that "all persons who stand by, aid or abet, assist or advise or in any way participate in a criminal act are guilty as principals" was correct. The objection refers to the role of Lavonne Hughes, who, according to the state's evidence, though present, did not actually participate in the beatings, but went in and purchased the beer with the ten dollar bill taken from Blaschke and subsequently stood by while another beating was being administered by his brother and Bridges. Lavonne Hughes testified, and other wit-

nesses testified on his behalf, that he was not with his brother and Bridges at the time the alleged assaults took place, but this too was a jury question, and not only because of Blaschke's evidence, Mr. and Mrs. Anhault having positively identified Lavonne Hughes as the man who purchased the beer, along with Bridges, about 10:00 or 10:15 p.m. on the night of April 22.[3]

It is argued that the court erred in allowing the state to cross-examine the defendants and other witnesses concerning other law violations. Lavonne Hughes was asked on cross-examination if he had been convicted on the charge of contributing to the delinquency of a minor, and replied "I was convicted of the charge but I didn't do it". He was also asked if he was convicted of drinking on the highway and of giving drinks to a minor and he replied that he was. Wayne Bridges was also asked about two convictions which he admitted. Lamar Hughes was asked "Did you take some money off Bobby Horne?" and the defendant answered, "Yes, sir". He later stated that he was not convicted. Also, the four witnesses who testified in behalf of the defendants were asked on cross-examination about convictions and all admitted at least one conviction. We have said numerous times that when a defendant takes the stand, he is subject to the same rules of evidence as other witnesses, and for the purpose of throwing light on his credibility, may in good faith, be asked about other crimes he may have committed, and other convictions, but he cannot be asked if he has been charged, indicted, or accused of other crimes. See *Johnson v. State,* and cases cited therein, 236 Ark. 917, 370 S. W. 2d 610. It will be noted that both defendants and witnesses were asked about convictions and acts they had committed, rather than accusations that might have been made against them. There was no error in permitting these questions.

---

[3]It is also asserted that the court erred in refusing to give an instruction that appellants could not be convicted on the testimony of Blaschke alone since he was an accomplice. We do not understand this objection as, of course, Blaschke was a victim, not an accomplice.

Finally, it is alleged that the court erred in refusing to disqualify the last three jurors, the defense having exhausted peremptory challenges, over the objections and exceptions of the defendants. The *voir dire* examination of prospective jurors does not appear in the record and in the absence of the questions and answers given on *voir dire,* we have held that it must be presumed that the discretion of the court was properly exercised. In *Gribble* v. *State,* 189 Ark. 805, 75 S. W. 2d 660, this court said:

"The examination of these jurors, upon *voir dire,* is not brought forward in the bill of exceptions. We do not know, and cannot ascertain from the transcript filed in this case, the nature or extent of the examination of these jurors, nor can we determine whether or not there was any abuse of the court's discretion, and it must be presumed by us that the discretion of the court was properly exercised."

As herein set out, the court committed no reversible error, and it appears that the appellants received a fair trial.

The judgment is affirmed.