**UNITED STATES of America**

**v.**

**Archie R. ERSKINE, Defendant.**

**Comm. No. 14038.**

United States District Court
D. Oregon.
Dec. 14, 1965.

138

Sidney I. Lezak, U. S. Atty., and Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for the Government.

Glenn Geurts and Howard R. Lonergan, Portland, Or., for defendant.

EAST, District Judge.

The defendant is charged with violation of the provisions of Title 26 U.S.C. §§ 4411, 4412 and 7203 (Wagering Act).

In connection with the arrest of the defendant, the amount of $2252.00 was taken from his person and the amount of $10.55 was taken from the automobile which was under the control of the defendant.

The defendant has moved for an order directing the return of those moneys and that said moneys and all knowledge obtained in connection with the arrest be suppressed as evidence.

Basically speaking, the defendant's motion is predicated upon three points, raising issues as follows:

*Point* 1. Interrogation by Special Agent Azorr (Azorr) after arrest without counsel, in violation of the defendant's rights under the Fifth Amendment to the United States Constitution (Fifth Amendment).

*Point* 2. Registration as required under the provisions of the Wagering Act (Title 26 U.S.C. §§ 4411–4412) tends to self-incriminate him, in violation of his rights under the Fifth Amendment.

*Point* 3. The seizure of the funds deprives him of funds for effective defense, in violation of unspecified rights under the United States Constitution.

I am content to accept the government's brief recount of the facts as follows:

"Warrants of arrest for Erskine and two others had been issued on October 29, 1964, for violation of wagering excise tax laws. A search warrant was also issued for the premises suspected of being used for the illegal gambling operation by Erskine and the others.

"On October 30, 1964, it was planned that the search warrant and the arrest warrants would be executed by Internal Revenue Special Agents. About 10:45 a. m. of that day, Erskine was seen driving away from the premises. While still in the driveway, Erskine was stopped by Agent LaFolett, and advised that

there was a warrant for his arrest. (Transcript p. 8, lines 3–13) Erskine was taken to United States Marshall Disney (p. 8, line 20–23) and the arrest warrant was read to him. Erskine remained with Disney while the agents proceeded to the premises, arrested one of the others and executed the search warrant. About 15 or 20 minutes later, (after the search warrant had been executed) Disney brought Erskine to the premises, when, after being advised of his rights, Erskine was questioned by Special Agent Azorr. Erskine was searched and an inventory made of the currency and checks seized from his person. It took approximately one half hour to count the currency and inventory the property. (p. 41, line 22–24)

"At this point it was after 12 Noon, and when LaFolett returned with Erskine's car, he received permission from Erskine to search the auto, found $10.55 in coin, inventoried it and Erskine receipted for the seized coin. At this point Erskine and the other person arrested were driven to Portland to be taken before the Commissioner. (The third person was arrested later that day.)"

I am unable to discern that the defendant claims that his arrest was unlawful, only that the seizure of the funds and the information obtained through the interrogation by Special Agent Azorr was wrong.

██ As for Point 3, I am satisfied to hold that the seizure and the holding of the moneys is lawful.

"Unquestionably, when a person is lawfully arrested, * * * the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for *weapons* or for the *fruits of* or *implements used to commit the crime.* Preston v. United States, 376 U.S. [364] 367 [84 S.Ct. 881, 11 L. Ed.2d 777]; Weeks v. United States, 232 U.S. 383, 392 [34 S.Ct. 341, 58 L.Ed. 652]; Agnello v. United

States, 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145].

"This right extends to things under the accused's immediate control, Carrol [Carroll] v. United States, 267 U.S. [122] 158 [45 S.Ct. 280, 69 L.Ed. 543], and, depending upon the circumstances, to the place where he is arrested. Marron v. United States, 275 U.S. 192, 199 [48 S.Ct. 74, 72 L.Ed. 231]; United States v. Rabinowitz, 339 U.S. 56, 61–62 [70 S.Ct. 430, 94 L.Ed. 653]."

The arrest of the defendant took place in the driveway of the premises which were to be searched under the search warrant that had been issued, and as an incident of the arrest and search the defendant was detained while the search warrant was executed and the arrest of the other persons was taking place, following which the defendant was brought to the premises where he was searched. This entire activity was one continuous sequence, and there was no remoteness as to time and place as between the arrest and search of the defendant's person and car, as did occur in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777, which case the defendant relies upon heavily.

██ I am further satisfied that where a search and seizure was legal, as was the case in this matter, the government has the right to hold and use the moneys seized as evidence before a grand jury hearing and upon a trial of the charges.

26 U.S.C. § 7302 states in pertinent part as follows:

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, * * * or which has been so used, and no property rights shall exist in any such property. * * *"

26 U.S.C. § 7322 states:

"Any forfeitable property which may be seized under the provisions of this title may, at the *option* of the Secretary or his delegate, be delivered to the United States marshal of

the district, and remain in the care and custody and under the control of such marshal, pending disposal thereof as provided by law."

It is to be here noted that the allowable option under § 7322, supra, has not been exercised.

■ The above sections abrogate any common-law rights that the defendant may have had, but for the sections, for a return of the moneys to finance his defense.

The defendant's claim under Point 2 is that in complying with the wagering tax registration provisions (Title 26 U.S.C. §§ 4411–4412) he would tend to self-incriminate himself of a crime is without force and is untenable under the following authorities:

Lewis v. United States, 348 U.S. 419, 422, 75 S.Ct. 415, 99 L.Ed. 475 (1955), followed in

United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964); and

United States v. Altiere, 343 F.2d 115 (7th Cir. 1965), from which I quote:

"If petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment." See also United States v. Costello, 352 F.2d 848 (2nd Cir. 10–29–65).

Counsel for the defendant points out that the vigorous dissenters in Lewis, supra, are now among the majority on the Supreme Court and that if the question were presented to the Supreme Court today, Lewis and its prodigy would be rejected. Maybe so. That situation did occur in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, which was tried in this Court, but here, as in Elkins, supra, it is not for this Court to say. Judge Friendly, in Costello, supra,

answered the same contention by writing:

"* * * it is no proper function of this court to speculate on whether the dissent of yesterday may become the decision of tomorrow."

■■ Now, dealing with Point 1, it is manifest from uncontradicted testimony that the defendant was fully and to him understandably advised that he did not have to answer questions by Azorr, that if he did answer, "they could be used against him; also, that he was entitled to have an attorney with him before he answered any questions." It is equally manifest that the defendant voluntarily answered some of Azorr's questions and declined to answer others, and further, that he did not desire to be represented by an attorney during this interrogation.

I conclude that the defendant's motion should be denied in its entirety. Counsel for the plaintiff will submit appropriate order in conformity herewith.