**UNITED STATES** ex rel. Thomas
**MONTGOMERY, Petitioner,**

v.

**Hon. Walter H. WALLACK, as Warden**
of Wallkill State Prison, Wallkill,
New York, Respondent.

**No. 65 Civil 397.**

United States District Court
S. D. New York.

June 16, 1966.

Robert W. Mullen, New York City, for petitioner, The Legal Aid Society and Hill, Betts, Yamaoka, Freehill & Longcope, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of New York, New York City, for respondent, Amy Juviler, Asst. Atty. Gen., of counsel.

## OPINION

WEINFELD, District Judge.

Petitioner, now confined to Wallkill state prison under a sentence of from three and one-half to seven years imposed pursuant to a judgment of conviction of the crimes of conspiracy as a felony and carrying a dangerous weapon, entered upon a jury verdict in the Supreme Court of the State of New York, Kings County, seeks his release by way of a federal writ of habeas corpus. He contends that the introduction in evidence upon his trial of a leather brief case and its contents, two loaded revolvers, was in violation of his federally protected right under the Fourth Amendment against unreasonable search and seizure.

The judgment of conviction was affirmed by the Appellate Division, Second Department,[1] and by the Court of Appeals.[2] Certiorari was denied.[3] The claim of violation of federal constitutional rights was tendered in the state courts, both before and during trial and on appeal, and it is acknowledged that petitioner has exhausted available state remedies as required by 28 U.S.C., section 2254.

The basic facts upon which petitioner rests his claim were developed upon the trial and are not in dispute. What is challenged is the lawfulness of a search of an automobile in which petitioner and two others were riding when arrested, but which was not searched until after they had been taken to a nearby police station.

The circumstances leading to petitioner's arrest and the search of the car are as follows. On January 9, 1961 New York City police detectives Carmine Palese and Jerome Gottlieb, while cruising in an unmarked police car in the Bedford-Stuyvesant section of Brooklyn, were attracted to a 1952 Cadillac because it bore a transporter license plate (as distinguished from the usual passenger plate), plus the fact that the plate was "hanging improperly." Three men were in the car, subsequently identified as Thomas Montgomery, the petitioner herein, Thomas Rozzell and Harvey Shaw. Montgomery was the driver, Rozzell sat next to him, and Shaw was in the rear. The detectives followed the car to a gas station where it stopped for service; there they observed Shaw get out of the car carrying a brown leather brief case, open the car trunk, place the case inside and reenter the car. The Cadillac then proceeded on its way trailed by the detectives in their car, who saw Shaw turn around and look at them; the Montgomery car soon stopped at a liquor store, which Rozzell entered. The Cadillac was kept under observation by detective Gottlieb while his partner telephoned the information unit at police headquarters and was advised that the car Montgomery was driving had been reported stolen six days before by its owner, who it subsequently developed was Montgomery's employer. When Rozzell reentered the Cadillac it headed toward the Brooklyn Bridge in the direction of Manhattan, but then suddenly reversed its course back into Brooklyn, and after travelling a distance came to a stop at Bedford Avenue and Fulton Street, at which point Montgomery and his two companions started to alight from the car. Thereupon the detectives halted the trio, identified themselves and frisked them for concealed weapons. Montgomery, in response to questioning, said he did not have the registration certificate for the car, that he had borrowed it and did not have the key to the trunk. Shaw also denied having a key to the trunk or that

1. People v. Montgomery, 21 A.D.2d 904, 252 N.Y.S.2d 194 (2d Dep't 1964).

2. 15 N.Y.2d 732, 256 N.Y.S.2d 942, 205 N.E.2d 206 (1965).

3. 382 U.S. 853, 86 S.Ct. 102, 15 L.Ed.2d 91 (1965).

he had opened the trunk and placed a leather brief case therein. The three suspects were then placed under arrest.

Detective Palese took Montgomery with him into a nearby store to make a telephone call for assistance, but returned at once without completing the call when he saw "a little activity outside," during which Rozzell escaped from detective Gottlieb's custody. The latter also had trouble with Shaw, who was "acting up," causing a crowd to collect, and a uniformed police officer was called upon to assist. Montgomery and Shaw were then taken to a nearby police station about one-half mile from the scene of the arrest. The Cadillac car was driven to and parked in front of the station house where it was kept under watch by a policeman. Montgomery and Shaw were brought inside the station house and questioned by the detectives in an effort to obtain the key to the trunk of the car. Each continued to deny possession of the key and also that the trunk of the Cadillac had been opened, despite the fact that the detectives said they had seen Shaw open it to place a brief case therein. Unsuccessful in their efforts to obtain the trunk key, within five minutes the detectives went outside to the parked Cadillac, which was still under the eye of the policeman, and searched the car. Palese ripped the back seat out, crawled into the trunk and removed a brown leather brief case similiar to the one he had observed Shaw place there. As he handed the portfolio to detective Gottlieb a shot rang out from a gun inside, tearing a hole through the case. On examination of the brief case Palese found therein two loaded re-

volvers, both in a cocked position, and a discharged cartridge. A further search of the car finally brought forth the trunk key, which had been concealed in the driver's seat.

 Upon all the facts here presented the detectives had probable cause to arrest Montgomery and his companions without a warrant. The reasonably trustworthy information received from police headquarters that the car had been reported stolen six days before, their observation of petitioner and his two companions, and the failure of the driver of the car to produce the registration certificate justified the detectives' belief that the trio were then committing or had committed a felony.[4] The possession of a recently stolen car, absent an explanation, permits an inference that the one in possession was the thief or had knowledgeable possession of the stolen property.[5] Since petitioner's arrest was lawful, there can be no doubt that the car properly could have been searched forthwith at Fulton Street and Bedford Avenue as an incident of that lawful arrest "to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime * * *."[6] Petitioner, however, contends that since an on-the-spot search of the car was not made immediately upon his apprehension, but only after he had been taken to the nearby police station and after five minutes had elapsed while the detective sought to obtain the key to the trunk, the reason for a search no longer obtained, and accordingly the search was unreasonable and in

4. See N.Y. Code Crim.Proc. § 177; United States ex rel. Lupo v. Fay, 332 F.2d 1020, 1022 (2d Cir. 1964), cert. denied, 379 U.S. 983, 85 S.Ct. 693, 13 L.Ed.2d 573 (1965). See also United States v. Di Re, 332 U.S. 581, 590–591, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

5. Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States ex rel. Lupo v. Fay, 332 F. 2d 1020, 1022 (2d Cir. 1964), cert. denied, 379 U.S. 983, 85 S.Ct. 693, 13 L. Ed.2d 573 (1965); Bray v. United States, 113 U.S.App.D.C. 136, 306 F.2d 743, 746–

747 (1962); Battaglia v. United States, 205 F.2d 824, 826 (4th Cir. 1953); United States v. Guido, 200 F.2d 105 (2d Cir. 1952); United States v. Sherman, 171 F. 2d 619, 623 (2d Cir. 1948), cert. denied sub nom. Grimaldi v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949). See also N.Y. Vehicle & Traffic Law § 401(4).

6. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). Accord, Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

violation of his Fourth Amendment rights. Only unreasonable searches and seizures are unterdicted under the Amendment;[7] and "what may be an unreasonable search of a house may be reasonable in the case of a motorcar. * * * [T]he test still is, was the search unreasonable."[8] The answer turns upon the facts and circumstances of each case —"the total atmosphere of the case."[9]

The arrests immediately after petitioner and his cohorts emerged from the Cadillac took place in a crowded, substandard neighborhood of Brooklyn. The fact is that not only did one suspect escape, but the other was "acting up," and in the commotion that followed a crowd quickly gathered in the congested area. In this situation it was not only prudent to remove Montgomery and Shaw from the scene of the arrest, but would have been potentially dangerous to have proceeded with a search of the car then and there. Having taken the men and the car to a nearby police station, it was reasonable to attempt to obtain from them the key to the trunk and, when they refused, to proceed with the search of the car where the danger of disturbance could be minimized.

We need no current reminder that arrests in a crowded, substandard neighborhood ofttimes trigger explosive action. The arrests of these men in just such a neighborhood presented a situation which had ugly prospects. The underlying causes which give rise to such potentially dangerous situations are not at issue here. What is important is the fact of their existence. To defer the search was not only in the interest of the detectives' own well-being, but also in the community interest. They were not required to forthwith search with its imminent risk as against a slight delay to assure a degree of safety. Under all the circumstances the search was made reasonably, promptly and substantially contemporaneously with the arrests.[10]

The petitioner presses hard that the car was not a "stolen car," but that he had received permission from his employer to use it and that its unlawful detention was merely a breach of bailment. It is unnecessary to decide whether demand had been made upon him for the return of the car so that his failure to do so subjected him to criminal sanction. The simple fact is that the employer reported to the police that the car had been stolen. This knowledge on the part of the detectives and the fact that petitioner was in possession of and driving the car constituted probable cause for his arrest, whether or not the car was in fact stolen.[11] Probable cause does not require evidence sufficient to sustain a conviction. It is satisfied when the facts and circumstances warrant a reasonably prudent person to believe that a crime was being or had been committed.[12]

The petition for a writ of habeas corpus is dismissed.

7. Harris v. United States, 331 U.S. 145, 150, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

8. Preston v. United States, 376 U.S. 364, 366–367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964).

9. United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

10. See Arwine v. Bannan, 346 F.2d 458 (6th Cir.), cert. denied, 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed.2d 123 (1965); Adams v. United States, 118 U.S.App.D.C. 364, 336 F.2d 752 (1964), cert. denied, 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965); Bartlett v. United States, 232 F.2d 135, 139 (5th Cir. 1956).

11. United States ex rel. Lupo v. Fay, 332 F.2d 1020, 1022 (2d Cir. 1964), cert. denied, 379 U.S. 983, 85 S.Ct. 693, 13 L. Ed.2d 573 (1965).

12. See Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).