Gary L. GASTON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15007.

Court of Criminal Appeals of Oklahoma.

July 2, 1969.

Miskovsky, Sullivan, Embry, Turner & Gregg, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Phil Scott, Asst. Attys. Gen., for defendant in error.

BUSSEY, Judge.

Gary L. Gaston, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Woodward County, with the crime of Possession of Marijuana, and from the judgment and sentence fixing his punishment at one year imprisonment in the State Penitentiary, he appeals.

Briefly stated, the pertinent facts are that at 8:00 p. m. on the 3rd day of February, 1968, two of the State's witnesses observed the defendant in a black Cadillac, bearing California license plates at the Sonic Drive-In in Woodward, Oklahoma, and heard him talking to a young man about marijuana. The gist of the conversation was that he (the defendant) was on marijuana and that the youth should try it sometime. These witnesses reported the incident to the police, gave them a description of the defendant and the automobile, and the defendant was later stopped in the downtown district of Woodward by officers who observed a pistol in the open glove compartment.

The arrest was made at approximately 9:00 p. m. on a Saturday evening, in a public thoroughfare where the traffic was heavy and the lighting poor. The appearance of the defendant, whose hair was long and uncut and wearing a bushy beard, together with the traffic conditions, caused a crowd to gather and rendered it impracticable to conduct a thorough search of the automobile at the scene. The automobile was locked and the defendant was taken to the police station where he refused to answer routine questions, swallowed an unknown substance, and a struggle ensued. The officers placed the defendant in a cell, obtained an invalid search warrant, brought the automobile to the police station, where they continued the search and found marijuana in the trunk of the car. The lapse of time between the arrest and the completion of the search was approximately one and one-half hours.

Since defendant conceded the validity of the arrest at the trial, and does not raise this issue on appeal, we will deal with the single assignment of error urged on appeal, viz.:

"That the search of defendant's automobile was too remote in time and place to have been incidental to arrest and therefore search without warrant failed to meet test of reasonableness under the Fourth Amendment and Article II, Sec. 30, Okl.Const. rendering evidence obtained as a result thereof inadmissible."

We believe that this question is thoroughly and comprehensively dealt with in the excellent brief of the State, which we adopt in pertinent part:

The leading Supreme Court decision which held the search of motor vehicles without a warrant to be reasonable if made upon probable cause was, as the name of the rule indicates and as pointed out by defendant in his brief, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The question in that case concerned the admissibility in evidence of contraband liquor which had been seized by Federal prohibition agents after the interception and search of an automobile without a warrant on a public highway. Posing as buyers of whiskey, the agents had arranged to meet the defendants at a later date to make a purchase and had noted the license number and description of their automobile. The defendants failed to meet the officers as planned, but several months later they were observed traveling a highway in what appeared to be a heavily laden vehicle. The officers pursued the vehicle, stopped it, and conducted an extensive search which disclosed a large quantity of liquor concealed behind the upholstery of the seats.

On appeal the Supreme Court upheld the conviction of the defendants and propounded what has since become the principal rule governing the search of motor vehicles without warrant, namely, that

a search may lawfully be made where there is probable cause to believe that an automobile or other conveyance contains that which by law is subject to seizure. The Court emphasized that this authority to search is not conditioned on the right to arrest. Rather, as quoted from page 159, 45 S.Ct. page 287:

" * * * [(I)t is] dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."

In support of this exception to the general warrant requirement, Chief Justice Taft, speaking for the majority, noted that the fourth amendment safeguards had long been construed (page 153, 45 S.Ct. page 285):

" * * * (A)s recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

The Court derived the search authority, in part, from the provisions of the National Prohibition Act which had empowered officers who discovered intoxicating liquors to seize both the liquor and the vehicle transporting it. While the statute expressly prohibited the search of a private dwelling without a warrant, it was silent as to the necessity for obtaining warrants before searching motor vehicles. The legislative history of the Act, the Court said, showed that Congress intended to provide for searches without warrant and that the statute was entitled to a strong presumption of constitutionality.

Thereafter, in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, the Supreme Court upheld a warrantless search of a vehicle made under the Liquor Enforcement Act of 1936. Federal Agents were parked at a point near the Missouri-Oklahoma border, in an area where there had been a great deal of illegal liquor traffic. One of the officers knew the defendant to have a reputation for hauling liquor, since he had arrested him on that charge several months earlier; moreover, he had twice seen him loading liquor into a car or truck during the preceding six months. Consequently, when the agents saw the defendant's heavily loaded automobile pass them on the highway, they gave chase and forced it to the side of the road. A search of the car revealed a quantity of untaxed liquor in the trunk, and on the basis of this evidence Brinegar was convicted of importing liquor into a "dry" state. On review, the Supreme Court sustained the legality of the search as having been made on probable cause, despite the fact that it had not been based on any specific statutory powers. Justice Jackson dissented, protesting that the decision dispenses with the warrant "as a matter of judicial policy" and extends the Carroll rule to the enforcement of all Federal offenses. Nevertheless, the principle has been referred to approvingly by the Supreme Court in several subsequent opinions and by numerous Federal and State tribunals in a variety of search situations, none of which could be said to be grounded on congressional authorization. See Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Ventresca v. United States, 380 U.S. 102, 107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

Neither is there any reason to assume that the type of offense is relevant. Although Carroll has been used almost exclusively in matters involving the transportation of per se contraband, such as narcotics, counterfeit money, and bootleg liquor, it would seem that its rationale extends as well to fruits and instrumentalities of crime. Each is a class of property which has long been held to be seizable under the terms of the fourth amendment. The only departure which that doctrine made from

existing rules of search and seizure law was to permit a search without warrant where conditions made it impracticable to secure one.

A recurrent question dividing the courts is whether the automobile is still mobile, for purposes of *Carroll*, once it has been parked and the driver is in custody, particularly when the keys have been surrendered to the arresting officer. Some decisions hold that the principle is inapplicable under these circumstances on the reasoning that:

" * * * With [the defendant] already under arrest and the agents in possession of his keys to the locked car, there was no danger of movement of the car or loss of the evidence."

Conti v. Morgenthau, D.C., 232 F.Supp. 1004, 1008 (1964); United States v. Kidd, D.C., 153 F.Supp. 605 (1957). This position is sound only if it can be said that the *Carroll* rationale was aimed solely at preventing the operator of the car from removing it or destroying evidence in the vehicle, without regard for the fact that others might be similarly inclined. But it is doubtful that any such limitation was intended by the Court. Obviously, the vehicle can be moved or its contents destroyed by other persons with or without a duplicate set of keys, unless of course the officers are able to safeguard such property until a warrant can be secured and executed.

■ The better rule is that the right to search is not lost simply because the operator of the car has been placed in police custody. A case in point is United States v. Haith, 4 Cir., 297 F.2d 65 (1961). In this instance, Federal agents followed the defendant, a known bootlegger, for the purpose of serving an arrest warrant charging him with conspiracy to violate the revenue laws relating to untaxed liquor. The agents observed the defendant, Haith, as he parked his car and entered his residence. They saw that the vehicle was overloaded, although it was equipped with supplemental air-cushioned springs, and de-

tected a strong odor of corn liquor emanating from the trunk. The defendant was arrested in his home and was asked for the keys to his automobile. He accompanied the agents out to the car and gave them a key to the ignition, but denied he had a key to the trunk lock. One of the agents removed the back seat, reached into the trunk section, and took out a half-gallon jar of corn liquor. Haith then produced a key to the trunk, and a search therein produced 90 gallons of illicit liquor.

On appeal, the defendant contended that the District Court erred in denying his motion to suppress the whiskey. Haith argued that with his arrest and the surrender of the ignition key, it became practical for the officers to procure a warrant and their failure to do so invalidated the search and seizure. Since the car was parked and could not be moved, he argued, there was no danger that the corn liquor could have been removed or destroyed; and that under these circumstances, some of the officers should have remained with the car to protect its contents while others made efforts to secure a warrant from a commissioner's office.

The Court of Appeals for the Fourth Circuit rejected these contentions:

"The case is within the well-established rule that a warrant is not required for a search of a movable vehicle if the officers have reasonable cause to believe that it contains contraband."

Touching upon the question of mobility, the Court said:

"The defendant, under arrest, could not have moved the vehicle until and unless he was discharged on bail. Meanwhile, however, others may have had other keys to the ignition switch or, with or without such keys, could have moved the vehicle unless the officers were prepared to protect their possession of the seized automobile."

The fact that this decision turns in part on the agents' authority to seize the automobile pursuant to a forfeiture statute does not alter the essential rationale of the case,

namely, that custody of the suspect does not destroy the automobile's character as a movable vehicle. Indeed, the opinion strengthens the argument for an immediate search in situations where no such seizure statute is involved, for in that event removal of the vehicle by the police for safeguarding until a warrant could be secured might well be impermissible. The only recourse would be for one of the arresting officers to remain with the automobile in order to insure that it is neither tampered with nor removed from its location. Even assuming that there is adequate manpower to permit the procedure, it would be unreasonable to suggest that police divide up and thereby to endanger themselves, the effectuation of the arrests, and the search of the automobile. The procedure is even less feasible in the case of the one-man patrol, since it would require the arresting officer to remain at the car with his prisoner while efforts are made by others to secure a warrant or until a fellow officer arrives on the scene to stand guard over the vehicle. In these circumstances, the officer is not expected to make a considered and correct on-the-spot determination as to the practicability of securing a warrant before searching the car, United States v. Francolino, 2 Cir., 367 F.2d 1013, 1018 (1966).

■ Since the search is said to be an incident of the arrest, these two acts must be closely related in point of time; in essence, this is the meaning of the longstanding requirement that the search be contemporaneous with the arrest. Ideally, then a vehicle should be examined for evidence of crime immediately after, and at the scene of, the arrest. But, of course, it is not always practicable to do so; consequently, the question here involved is: When and under what circumstances may an arresting officer delay his search until a later time or place without forfeiting his authority under the incidental search rule?

The leading decision in this area is Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), involving the search of an impounded car after the occu-

pants had been taken into custody. In that case police received a complaint at 3:00 o'clock in the morning that "three suspicious men acting suspiciously" had been seated in a car parked in a business district since 10:00 o'clock the previous evening. The officers went to the location and found the defendant and two companions in the car. When asked why they were parked there, the suspects gave unsatisfactory and evasive answers; they admitted they were unemployed and had only 25 cents among them. Although one of the men claimed ownership of the vehicle, he could not procure any title. The officers then arrested the men for vagrancy, searched them for weapons, and took them to police headquarters. Their automobile was towed to a garage. After the suspects were booked, several officers searched the vehicle and found two loaded revolvers in the glove compartment. They subsequently gained entry to the trunk and found caps, masks, a false license plate, and other items implicating the defendants in a conspiracy to commit bank robbery. On review of the conviction, the Supreme Court held the search was "too remote in time or place" and therefore the evidence should have been suppressed.

Often the initial reaction to court decisions which touch upon uncharted areas of the law is one of over-interpretation, with the result that the rules or policies adopted go beyond the actual language or intent of the opinion. The *Preston* case is no exception. Some enforcement agencies and courts, for example, have read into the decision the blanket rule that any delay, regardless of the circumstances, will automatically bar the possibility of conducting a lawful incidental search. This interpretation was seemingly borne out by an early District Court opinion which excluded physical evidence found in a suspect's vehicle where Federal agents removed the car from the flow of traffic in a town square before commencing the search. But *Preston*, itself, does not go that far, and no appellate case since *Preston* has suggested that the requirement of contemporaneity

can be satisfied only by a search conducted at the immediate time and in the immediate vicinity of the arrest. People v. Webb, 66 Cal.2d 107, 56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708 (1967); State v. Wood, 197 Kan. 241, 416 P.2d 729, 733 (1966). Most courts recognize that compelling situations are certain to arise in which common sense would require that the search be postponed until a later time.

In addition to a continuity of purpose, the arrest and the search must also be part of one continuous operation, without any sharp interruption between the two acts. This emphasis on "a continuing series of events" is to be found wherever "contemporaneity" is in issue, whether the subject of the search is a motor vehicle, fixed premises, or the person of the accused. See e. g., State v. Wood, supra (where the rule was phrased in terms of whether the arrest, removal of the automobile, and its search were "a series of events constituting one continuous happening"); Arwine v. Bannan, 6 Cir., 346 F.2d 458 (1965); Trotter v. Stephens, D.C., 241 F.Supp. 33 (1965) (held search of car obtained incident to and contemporaneous with arrest of defendant "was merely part of one continuous act, even though interrupted by the arrest of [codefendant] in the interim"); Price v. United States, 121 U.S. App.D.C. 62, 348 F.2d 68, 70 (1965) (held search of vehicle in police parking lot "was part of a continuing series of events which included the original arrest and continued uninterruptedly as lawful police investigation and action"); Rhodes v. United States, 5 Cir., 224 F.2d 348 (1955) (part of one continuous transaction); Clifton v. United States, 4 Cir., 224 F.2d 329 (1955); People v. Webb, supra (search of car after it had been towed from the scene of the arrest to police parking lot upheld as part of continuing series of events); Holt v. Simpson, 7 Cir., 340 F.2d 853 (1965) (search of premises prior to arrest sustained as "but part of one transaction"); King v. Pinto, D.C., 256 F. Supp. 522 (1966) (search of petitioner's apartment "a few minutes" after his arrest

in rear of apartment house upheld; quoting from State v. Doyle, 42 N.J. 334, 200 A.2d 606, 611 [1964], the Federal District Court said: "It is sufficient if the valid arrest and search are reasonably contemporaneous, that is, they occur as parts of a single transaction, as connected units of an integrated incident"); United States v. Masini, 6 Cir., 358 F.2d 100 (1966) (search of arrestee after brief delay to allow for telephone call to police headquarters was "part of one continuous operation"); United States v. Erskine, 9 Cir., 248 F.Supp. 137 (1965) (valid search of person made 20 minutes after arrest where "the entire activity was one continuous sequence").

Simply stated, the "continuous operation" concept means only that there should be no unnecessary delay before making an incidental search. [An interesting parallel is found in one case where similar terminology was employed in defining "necessary delay" for purposes of the Federal prompt arraignment statute.] Perry v. United States, 121 U.S.App.D.C. 29, 347 F.2d 813 (1964). Here again, this is simply a restatement of the settled rule that the search should follow as soon after the arrest as circumstances will permit. Obviously, the examination cannot be postponed merely to suit the personal convenience of the investigating officer. Petty v. State, 241 Ark. 911, 411 S.W.2d 6 (1967).

■ If there are "unusual circumstances" in the case which prevent an immediate search, the car should be removed to the police station or some other suitable location and searched. See Arwine v. Bannan, supra. One such situation is an emergency which would make it dangerous or otherwise unreasonable for the officers to search the car immediately at the scene of arrest. Thus in People v. Webb, supra, the California Supreme Court upheld a later search of a vehicle at the police station, stressing the fact that gunfire and the subsequent crash of the defendant's car had attracted a large crowd, requiring that additional policemen be summoned to control the mob. In another case, a Federal court

pointed out that the arrest was made in a "crowded, substandard neighborhood," where a prolonged stay necessary to conduct a thorough search of the vehicle might "trigger an explosive situation." United States ex rel. Montgomery v. Wallack, D.C., 255 F.Supp. 566 (1966).

Other delays held not to violate *Preston* include those occasioned by removal of the car from a heavily traveled highway, State v. Anderson, 148 N.W.2d 414 (Iowa 1967) (car taken to police station); or from a location where it might present a substantial hazard to oncoming motorists, State v. Schwartzenberger, 70 Wash.2d 103, 422 P. 2d 323 (1966) (car moved to off-street parking lot); or where a burglary suspect was kept in his automobile for three hours as a decoy for the arrest of his accomplice. Arwine v. Bannan, supra. A later search has also been sustained where it was necessary to permit a more thorough and scientific examination of the automobile at a subsequent time, People v. Talbot, 64 Cal. 2d 691, 51 Cal.Rptr. 417, 414 P.2d 633 (1966); and more simply, where it was "prudent" to move the car to a more convenient or suitable location for the search, State v. Wood, supra. In still another case, the need to protect the defendants from the elements and to afford the officer "better conditions for the search" justified a brief delay until the sheriff's office was reached. State v. McCreary, 142 N. W.2d 240 (S.Dak., 1966) (suspects arrested on an open highway on a "typically cold winter evening in northern South Dakota"). Some leeway can also be expected where the delay is prompted by concern for the personal safety of the investigating officer. In most cases it would be unwise for a patrolman to attempt a search of the vehicle while maintaining custody over a prisoner. Only the most doctrinaire reading of *Preston* would hold that a postponement under such circumstances—to allow for the arrival of additional officers or to permit removal of the vehicle to a safer location—was unnecessary delay.

But even though conditions may preclude a complete search of the automobile at the scene, if the situation will allow, it is advisable to initiate the search at the time and place of the arrest and to resume it back at the station as was done in this case. The courts seem to have less difficulty justifying a delay in these circumstances, since it is generally reasoned that the later examination is simply part of the original search. People v. Webb, supra. Thus, in People v. Moschitta, 25 A.D.2d 686, 269 N.Y.S.2d 70 (2d Dept. 1966), police officers searched the interior of the car at the time of defendant's arrest for auto theft but found no incriminating evidence. However, a later search at the station disclosed a pistol in the trunk of the vehicle and led to the defendant's indictment for possession of a weapon. Reversing an earlier order granting the defendant's motion to suppress, the court admitted the weapon in evidence, stating:

"The subsequent search at the police station, made in an effort to ascertain the identity of the owner of an apparently stolen car, may be characterized as a continuation of the original search."

Accord, People v. Hatch, 25 A.D.2d 606, 267 N.Y.S.2d 651 (4th Dept. 1966); see also Drummond v. United States, 8 Cir., 350 F.2d 983 (1965) (search of vehicle initiated outside restaurant in which defendant was arrrested and continued back at police lot).

In summary, where there are unusual circumstances such as those described above, the arresting officer may defer his search until after the suspect and his vehicle have been removed to the police station or to some other suitable location.

The brevity of the delay in conducting a search has been emphasized in several decisions and, as indicated, is one of the underlying notions in the "continuous operation" concept often expressed by the courts in this context. People v. Webb, supra; United States v. Price, supra; Arwine v. Bannan, supra; State v. McCreary, supra.

In the October, 1966 term, the Supreme Court again had an opportunity to consider the propriety of a warrantless vehicle

search conducted at a police station. In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the defendant was arrested for selling heroin, and his car was taken into custody under a State statute which provides that any vehicle used to store, conceal, transport, sell, or facilitate the possession of narcotics should be impounded and held as evidence pending forfeiture proceedings. Eight days after the defendant's arrest and the seizure of his vehicle, the car was searched and evidence was discovered which was used to obtain a conviction. In a decision written by Justice Black, the Court held that under the circumstances of this case the examination or search of the car validly held by the police for use as evidence in a forfeiture proceeding was reasonable under the fourth amendment. Preston was distinguished on the ground that the officers in that case had impounded the vehicle simply for the defendant's convenience following his arrest on a vagrancy charge. There was no indication "that [they] had any right to impound the car and keep it from Preston or whomever he might send for it." Here, seizure and custody of the vehicle were required because of the nature of the crime for which the petitioner was arrested. And once custody was so acquired, "It would be unreasonable to hold that the police, having to retain the car in their garage (pending forfeiture proceedings), had no right, even for their own protection, to search it."

The reaction among the lower courts to Cooper has been mixed. Some judges have read the opinion, as did the four dissenting justices, as overruling the Preston case. See People v. Webb, supra. Others have indicated that Cooper modified Preston to the extent that the police may now search an impounded vehicle at a time and place remote from the arrest. See, e. g., State v. Hunt, 198 Kan. 222, 424 P.2d 571 (1967); Stewart v. People, 426 P.2d 545 (Colo., 1967). It is doubtful that either view is entirely correct. The latter interpretation would trivialize Preston by applying its restrictions only where the

search was for physical evidence unrelated to the crime of arrest. Moreover, Preston was the first unanimous search and seizure opinion handed down by the Supreme Court in over thirty years. At the very least, it is unlikely that the Supreme Court would overrule the decision or so emasculate the doctrine as to nullify it just two short years after its pronouncement. And since Justice Black authored both opinions, it can hardly be said that he was unaware of the full implications of the previous ruling.

It is submitted that while Cooper undoubtedly broadens police authority to examine certain impounded cars for evidence of crime, it in no way undercuts the requirement that an incidental search be conducted at the same time and the same place as the arrest. It is more accurate to say that the concern of Cooper is less with the search of a vehicle incident to arrest than with the examination of a car which has lawfully been seized and is held as evidence by the police. In Cooper, the car was taken into custody pursuant to a State forfeiture provision. Once seized, the police had complete dominion and control over the vehicle; consequently no further trespass against the property was committed by the subsequent examination. Since the seizure of forfeitable vehicles is well established in the law, this aspect of the opinion was fully consistent with existing doctrine.

Justice Black was careful to point out, however, that the Court's opinion was not based solely on the application of State forfeiture laws. The real inquiry, he said, is "whether the search was reasonable under the Fourth Amendment." The facts in this case indicated that the automobile had been used to transport narcotics. As a result, it was itself evidence of the crime rather than, as one court put it, "merely a container of incriminating articles." People v. Webb, supra. Thus, the search "was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." The broad implications of this

language are that the defendant's vehicle could properly have been taken into custody as an instrumentality of the crime at the time the arrest was made. In this respect the case is similar to the *Price* decision, discussed earlier, where it was held that police officers, who had made what was tantamount to a contemporaneous seizure of evidence within the car, had the right to examine such evidence at a later time. In *Cooper*, the entire automobile, not simply its contents, was evidence of the crime, since it had been used to transport contraband items. It was, therefore, an implement of the offense found in the control or possession of the accused at the time of his arrest.

Johnson v. State, 238 Md. 528, 209 A.2d 765 (1965), offers an excellent illustration of the application of this approach. There the suspect was arrested on a charge of rape and his vehicle was towed to a police station, where a search disclosed incriminating evidence. Three days later sweepings and dust samples were taken from the car. In sustaining these delayed searches, the Maryland Supreme Court distinguished *Preston* on the ground that the "automobile had been used as an instrument in the perpetration of the alleged crime." Consequently, "the automobile itself could have been offered in evidence at the trial. Having lawfully seized it, the police had the right to examine it after the seizure for evidence in connection with the crime." State v. Anderson, 148 N.W.2d 414 (Iowa 1967) (search of vehicle at police garage was reasonable because the car was an instrumentality used in the carrying of concealed weapons and the possession of burglary tools); Abrams v. State, 223 Ga. 216, 154 S.E.2d 443 (1967) (suspect's vehicle seized at time of his arrest "as an implement used in the commission of the crime of rape"); Trotter v. Stephens, supra, (sustaining search where defendant's "automobile was an instrumentality of the crime, and unlike *Preston* * * * it was examined closely at the time of arrest and searched a few hours later"). See also People v. Webb, supra; People v. Miller,

245 Cal.App.2d 112, 53 Cal.Rptr. 720, 738–739 (1966).

In short, the *Cooper* decision seems to indicate that the particular basis on which the vehicle was seized was immaterial; in that case, custody could have been acquired on probable cause to believe either that the car had been used in violation of forfeiture laws, or that it was an implement of the crime for which the arrest was made. In either event, once the vehicle was lawfully seized, it could properly have been searched without a warrant regardless of whether such search was contemporaneous.

■ We believe that the arrest of the defendant was lawfully made upon probable cause to believe that the Cadillac of the defendant contained narcotics which by law is subject to seizure. The police of Woodward were informed that this defendant was selling marijuana. The police intercepted the car, which was a fruit and instrumentality of the crime of carrying contraband narcotics and concealed weapons, which has long been held to be seizable under the terms of the fourth amendment. The search was contemporaneous and incident to the lawful arrest. When the defendant was stopped, a cursory search revealed a concealed weapon for which the defendant was arrested. Since the stopping of the defendant took place on a busy street in Woodward and a large crowd began to gather, it was necessary for the police to take this defendant to the police station and then return for the car. It is irrelevant to this case that an invalid search warrant was procured, since this was an incidental search that was conducted without unnecessary delay. Further, the police did more than the law really requires, since there were unusual circumstances surrounding this arrest and search. They were on a heavily traveled street, a crowd gathered, the lighting was very poor and better conditions were needed for the subsequent search. The original search was initiated at the time and place of the arrest and disclosed a concealed weapon. The search was resumed after the defend-

ant was booked and the car moved to a better location and was therefore a part of the original search. Additionally, the Cadillac could have been used as evidence in the case since it was the instrumentality being used to transport contraband narcotics and no further trespass against the property was committed by the subsequent examination.

For all of the reasons above set forth, we are of the opinion that the search here involved was not unreasonable, but incident to a lawful arrest, and the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, Presiding Judge (specially concurring).

The question of search and seizure in this case is a close one and my view of it is controlled only by the unique circumstances surrounding the arrest of the defendant. The facts of this case reveal that when the arresting officers stopped the defendant's automobile it was on a busy street, in a small town, on Saturday night. To add more to the unique circumstances, the defendant—who was wearing a hairstyle now typical of the rebellious youth— began offering resistance to the arresting officers. As the arrest progressed, the officers observed that a crowd of people commenced to gather around the scene. Consequently, they reached the decision that wisdom dictated the search of the automobile should be made under less trying circumstances. Hence, they locked the vehicle, took the defendant to the police station for booking, which function required more than an hour to accomplish. After that otherwise routine task was performed, the officers had the vehicle towed to a place where they could properly search the vehicle without interference. Under those circumstances, it seems to me that the search and seizure was incident to the arrest.

This position is substantiated by the decision of the United States Court of Appeals, Seventh Circuit, in the decision rendered in United States v. Evans, 7 Cir., 385 F.2d 824, 825 (1967). That Court re-cited in a similar search and seizure case the following:

"We think the agents came to a reasonable conclusion that the search of the automobile should not be continued at the place where the search was first undertaken in view of the gathering crowd. As Judge Weinfeld said in United States ex rel. Montgomery v. Wallack, 255 F. Supp. 566, 569 (S.D.N.Y.1966)—'We need no current reminder that arrests in a crowded, substandard neighborhood ofttimes trigger explosive action. * * *'"

The only difference between the two cases is that in the Evans case, supra, the two Federal agents arrested the defendant as he left a bar, when a search of his person was made. The agents then commenced to search the defendant's automobile, when they noted a number of people were gathering near them. They decided it was advisable to move quickly, so defendant was placed in the agents' car and one of the agents drove the defendant's car to the basement of the Federal building, where they searched the car some twenty minutes later.

However, in the case under consideration it was not feasible for one officer to drive the police car while the other officer drove the defendant's car, for the reason the defendant continued to resist the arrest and it required both officers to contain him. Under such circumstances it appears only reasonable to have searched the automobile after it was towed to a safe place. Considering all the factors involved, the time differential, between the Evans case, supra, and the case at bar, is understandable.

Hence, I must conclude in this case, that the search and seizure was not in violation of defendant's constitutional rights.

NIX, Judge (dissenting).

The search herein was made approximately one and one-half hours after the

arrest, with a warrant that all parties agreed was invalid. The officers admitted that they signed no affidavit to obtain the search warrant and to his knowledge, never swore to anything. If they had properly obtained the warrant this question would never have been before the Court. To obtain a search warrant is a simple thing, and may be rightly done with the least effort. In this writer's opinion the search was entirely too remote from the arrest to be done without a valid search warrant. The car was left unattended during the one and one-half hours heretofore mentioned and the keys to said vehicle were in custody of the police. I sincerely believe that this set of facts in this case squarely fit those related in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777. In that case, the Supreme Court said:

> "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."

and:

> "The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime * * *"

And, page 884:

> "Nor since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v. United States, supra, 267 U.S. at 153, 45 S.Ct. at 285, 69 L.Ed. 543. We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

The *Preston* case was reversed and remanded.

As Justice Jackson wrote in the Brinegar case, [Brinegar v. United States, 338 U.S. 160–188, 69 S.Ct. 1302, 1313, 93 L.Ed. 1879] and most brilliantly, wrote:

> "The Fourth Amendment states: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'
>
> These, I protest, are not mere second-class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government. And one need only briefly to have dwelt and worked among a people possessed of many admirable qualities but deprived · of these rights to know that the human personality deteriorates and dignity and self-reli-

818

ance disappear where homes, persons and possessions are subject at any hour to unheralded search and seizure by the police.

But the right to be secure against searches and seizures is one of the most difficult to protect. Since the officers are themselves the chief invaders, there is no enforcement outside of court.

Only occasional and more flagrant abuses come to the attention of the courts, and then only those where the search and seizure yields incriminating evidence and the defendant is at least sufficiently compromised to be indicted. If the officers raid a home, an officer, or stop and search an automobile but find nothing incriminating, this invasion of the personal liberty of the innocent too often finds no practical redress. There may be, and I am convinced that there are, many unlawful searches of homes and automobiles of innocent people which turn up nothing incriminating, in which no arrest is made, about which courts do nothing, and about which we never hear. Courts can protect the innocent against such invasions indirectly and through the medium of excluding evidence obtained against those who frequently are guilty. Federal courts have used this method of enforcement of the Amendment, in spite of its unfortunate consequences on law enforcement, although many state courts do not."

These indispensible rights should never be chipped away but should be preserved and the Fourth Amendment to the Constitution should be held in the utmost esteem whether it be relative to a man's home or his automobile which has long been declared one of his effects.

I am of the opinion that the search was illegal and the evidence taken from the trunk of the car should have been suppressed.