Jack Daniel **CARTER**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–16307.

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1971.

Virgil Upchurch, Anadarko, for plaintiff in error.

Larry Derryberry, Atty. Gen., Mike D. Martin, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Jack Daniel Carter, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Caddo County for the offense of Burglary in the Second Degree; his punishment was fixed at two years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, the evidence adduced that Mr. Gerald Hintchel and his wife lived in Hinton, Caddo County, Oklahoma, where they owned a combination grocery store and service station, about one-fourth mile south of Hinton on State Highway 281. He testified that on Saturday, May 2, 1970, they closed their business between 11:00 p. m. and 11:30 p. m., leaving four quarters. five dimes, eight nickels, and a roll of dimes in the cash register. Upon returning to his place of business at approximately 1:30 a. m. on Sunday, May 3, 1970, he discovered that several boxes of cigarettes had been taken from beneath the counter, together with a box and two sacks full of cigarettes from the trays, which were stacked by the front door, that a television set had been moved close to the front door, that the north window of the building was broken, and that a lug wrench, which was not there the night before, was lying on the counter. Mr. Hintchel identified State's Exhibit Number One, the lug wrench

found on the check-out counter, State's Exhibit Number Two, the sack with cigarettes found near the front door, State's Exhibit Number Three, the box containing cigarette cartons, which was found near the front door, State's Exhibit Number Four, a second box with cigarettes found near the front door, and State's Exhibit Number Five, a second sack with cigarettes found near the front door.

On cross-examination, Mr. Hintchel identified where he had marked all of the Exhibits with his initials, with the exception of one sack, which he did not mark.

Mr. Dearl Tucker, Hinton, Oklahoma City Marshall, testified that while driving past the Hintchel business about 12:45 a. m. on May 3, 1970, he noticed a car sitting under the awning; upon turning around to investigate, the car drove away without turning on its headlights. In pursuing the car, which he identified as a red 1963 or 1964 Chevrolet, south out of Hinton with his police car's red light and siren turned on, and at speeds of up to 110 miles per hour, he radioed the Binger City Marshall, Buntin Williams, who took up the chase ten miles outside of Hinton.

Upon arriving at Binger, Oklahoma, he found the pursued car stopped beside Marshall Williams' car, and the defendant sliding down an embankment. He advised him of his rights, and called an ambulance to come to the scene; Tucker and Delmar Butler, the Deputy of Marshall Williams, took the defendant to the Anadarko, Oklahoma Hospital in Tucker's car. Tucker stated that the distance between Hinton and Binger is 16 miles. He described the defendant's attire to be light gold, Levi-type pants, only one shoe, and a short sleeve sport shirt, all of which he identified as State's Exhibit Number Six. Tucker and Butler stayed at the hospital while the defendant was being treated, until approximately 2:45 a. m., when T. L. Stuart and C. W. Taylor of the sheriff's office, arrived at the hospital, whereupon Tucker and Butler went to the sheriff's office, leaving the defendant in the emergency room.

On cross-examination, Tucker testified that while chasing the defendant, he knew of no crime that had been committed, except that of a traffic violation.

Mr. Dixie Anderson, hospital orderly at the Anadarko Hospital, testified that he first saw the defendant between 1:30 a. m., and 2:30 a. m., on May 3, 1970, at the emergency room of the Anadarko Hospital (Tr. 28, 29). In identifying State's Exhibit Number Six as the clothes the defendant wore that night, Anderson stated that he, a doctor, a nurse's aid, and one Dorothy Williams, who was the charge nurse, were all present when the defendant's clothes were removed; the clothes were placed in a bag, a knot tied in the end of the bag, and the bag placed on the floor next to the telephone. The bag was taken, along with the defendant, to a room on the second floor, and the bag was placed in a tin cabinet in the room, from which the bag was removed about ten minutes later and given to Trooper Russell Taylor. Anderson stated that the clothes were in his view at all times, except when he was in the x-ray room with the defendant, and the bag was still tied in a knot and laying by the telephone when he came out of the x-ray room.

Mr. Buntin Williams, Binger City Marshall for eight years, having been notified to apprehend the defendant's car, contacted the car between Hinton and Binger. While pursuing the defendant's car with his red light and siren on, and at speeds in excess of 110 miles per hour into Binger, Williams saw the defendant lose control of his vehicle and begin running up an embankment, whereupon, after warning the defendant to halt or he would fire, Williams shot the defendant in the hip as he was topping the embankment. The defendant fell down the embankment; Williams arrested him, and advised him of his rights. Instead of waiting for an ambulance, it was decided that the defendant needed medical attention, which necessitated his taking the defendant to the Anadarko Hospital in a police car. On cross-examination, Williams testified that he was not aware of any

crime having been committed, except that of traffic violation.

Mrs. Dorothy Williams, charge nurse at the Anadarko Hospital, was present in the emergency room of the hospital when the defendant was brought in for treatment, and his clothes removed. She testified that the defendant's clothes were placed in a bag, and taken out of the emergency room along with the defendant, and that State's Exhibit Number Six contained those same clothes.

Mr. Russell Taylor, State Highway Patrol Trooper, related that he arrived at the Anadarko Hospital on the morning of May 3, 1970, and took possession of a bag of clothes, which he identified as State's Exhibit Number Six, from Mr. Dixie Anderson. He took the bag to the sheriff's office and turned it over to Dwayne McAdams, the jailer, who made a list of all of the defendant's possessions.

Mr. J. D. McAdams, Caddo County Jailer, stated that he was on duty the morning of May 3, 1970, at approximately 3:25 a. m., when Trooper Russell Taylor brought him a bag which he identified as State's Exhibit Number Six, containing the clothes and personal effects of the defendant. His examination of the defendant's pants revealed a roll of dimes, one half-dollar, four quarters, eight dimes, and eleven nickels. He sealed the money in an envelope and placed both the envelope and the clothes in the bag, which he secured in the vault.

Mr. C. W. Taylor, officer from the Caddo County sheriff's office, went to Mr. Hintchel's business in Hinton in the early morning hours of May 3, having been informed of the prior proceedings by the police officers involved. His investigation revealed the front door open, two boxes and a big sack of cigarettes just inside the door, a television set close to the front door, and a broken window at the north end of the building.

After notifying Mr. Hintchel, who immediately came to his place of business, further investigation revealed a lug wrench and a jack handle on the counter beside the cash register; they did not belong to Mr. Hintchel. In searching the defendant's car, with his permission, Taylor found a bumper jack, but no lug wrench and jack handle. Mr. Russell Taylor was recalled by the defendant and testified that the bag he picked up at the hospital contained only one of the defendant's shoes, and the other shoe came from City Marshall Williams.

Eula Carter testified that she conducted a rummage sale in Oklahoma City on May 1, 1969. She took the remaining change, consisting of five rolls of dimes, two rolls of nickels, two or three Kennedy half-dollars, and eight to twelve quarters, and placed them in the dash pocket of the defendant's car. She admitted on cross-examination that she did not know if the defendant had ever gotten the money, or what happened to it.

Willie Ingram testified that he was with the defendant on the night of May 2, 1970, from 9:00 o'clock p. m., until around 12:30 o'clock a. m. on May 3.

The defendant did not testify.

■ The first proposition asserts that the trial court erred in overruling the defendant's motion to suppress evidence, and in admitting improper and prejudicial evidence over his objections. The defendant argues that the search of his clothes was too remote in time and place to be incidental to his arrest, and was unreasonable under both the United States and the Oklahoma Constitutions. Defendant cites, among others, Gaston v. State, Okl.Cr., 457 P.2d 807, to support this assertion, wherein we stated:

"In addition to a continuity of purpose, the arrest and the search must also be part of one continuous operation, without any sharp interruption between the two acts. This emphasis on 'a continuing series of events' is to be found wherever 'contemporaneity' is in issue, whether the subject of the search is a motor vehicle, fixed premises, or the person of the accused."

In the instant case, the defendant was shot and arrested approximately 12:45 a. m. The officers decided not to wait for an ambulance because of his condition, and drove the defendant to the hospital. The defendant's clothes were picked up by Officer Taylor at approximately 2:45 a. m., some thirty minutes after the defendant entered the hospital. They were taken to the sheriff's office, where they were examined by the jailor at approximately 3:30 a. m.

In Gaston v. State, *supra*, we stated:

"Most courts recognize that compelling situations are certain to arise in which common sense would require that the search be postponed until a later time."

In United States v. Caruso, 2 Cir., 358 F. 2d 184, cert. den. 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88, the defendant objected to the taking of his clothes some six hours after his arrest. The Second Circuit stated:

"But this case is distinguishable from Preston [1] because there the question concerned the search of an automobile long after the defendants had been put in jail. Here the clothes were constantly in sight, were taken on the person of the suspect at the time of arrest and were continuously in custody. [Citations omitted]

"The appellant's contention means that the seizure of his clothing could have been made constitutionally only if, immediately on his arrest, he had been stripped to the buff on the public highway. Even though that April 13th may have been a very pleasant spring day, we are of the opinion that the argument is somewhat extreme."

In a similar fact situation, Commonwealth v. Gordon, 431 Pa. 512, 246 A.2d 325, the Pennsylvania Court stated:

"If the police seized Gordon's clothing and shoes at the time he was taken into custody in his mother's home, the seizure would unquestionably be incidental thereto. But he was then seriously wounded and his condition dictated immediate transferal to a hospital. Common sense required that the seizure of his clothes be delayed until after his arrival at the hospital."

See also Wilkinson v. State, Mo.App., 461 S.W.2d 283, wherein the Missouri Court reached a similar result.

We are of the opinion that the facts in the case at bar are such that a compelling situation arose as discussed in Gaston v. State, *supra*, in which common sense would require that the search be postponed until a later time. We therefore find this proposition to be without merit.

 The final proposition contends that the trial court erred in denying defendant's Motion for Mistrial for improper argument and misconduct of the District Attorney. In his closing argument, the District Attorney stated:

"Mr. Upchurch and nobody else told you why Jack Daniel Upchurch was parked in that service station."

The defendant contends that said remark was a comment on the defendant's failure to testify. Title 22, O.S.1961, § 701. The Record reflects that the defendant objected to the District Attorney's remark and took exception when the remark was overruled; however, the defendant did not move the court to exclude such remark from the jury, or to instruct them not to consider the remark for any person. In Byrnes v. State, Okl.Cr., 451 P.2d 19, the Court cited Harvell v. State, Okl.Cr., 395 P.2d 331, in stating:

" 'Counsel for a defendant must not only object to improper statements of the county attorney * * *, but he must go further and move the court to exclude such remarks from the jury and to instruct them not to consider them for any purpose, unless the remarks were of such character that the error would not be cured by a withdrawal of the remarks.' "

---

1. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

We further observe that the District Attorney's remark was made in the second phase of his closing argument after defense counsel had made the following statements:

"Why did he flee? If you arrive at a filling station under the circumstances and saw Mr. Taylor, saw the door was open. He could see. If you had pulled up in there and you are an ordinary, reasonable citizen, and saw this place had been entered probably by the door being open—I guess you could see in there—right in front of the door you could see cigarette boxes, a television set, you would have thought reasonably, I guess I better go call the Marshal. If you were young like this fellow you would have taken out." (Tr. 115)

In Gaddis v. State, Okl.Cr., 447 P.2d 42 (1968), we cited Denny v. State, Okl.Cr., 346 P.2d 359, wherein we stated:

"The Oklahoma statute prohibiting comment on failure of defendant to testify is comprehensive in the extreme and the Court of Criminal Appeals will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witnesses in his behalf. This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the State's evidence by proper proof other than that which might be given by the defendant personally."

We further stated in *Gaddis, supra*:

"So, as a general rule, remarks of the prosecuting attorney, *including such as might or would otherwise be improper,* are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or are in reply to, or retaliation for, his acts or statements, at least where the prosecuting attorney's remarks are not excessive, but are justified replies, * * *. (Emphasis supplied.)"

We are of the opinion that the District Attorney's remark was invited by the defendant's counsel in his argument to the jury, and was a proper response to his remarks.

In conclusion, we observe that the Record is free of any error which would justify modification or reversal; the judgment and sentence is accordingly affirmed.

BRETT and NIX, JJ., concur.